BRADLEY S. PHILLIPS (State Bar No. 85263)
brad.phillips@mto.com
BRIONNA N. NED (State Bar No. 301265)
brionna.ned@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendant
JAMES EDWARD SPAR, M.D.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DONALD T. STERLING, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL BASKETBALL ASSOCIATION, a New York professional association; ADAM SILVER, an individual; DAVID STERN, an individual; ROCHELLE H. STERLING, an individual; MERIL SUE PLATZER, an individual; JAMES EDWARD SPAR, an Individual; and DOES 1 through 50,<br><br>Defendants. | Case No. 2:14-cv-04192-FMO-SH<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE (C.C.P. § 425.16) OF DEFENDANT JAMES EDWARD SPAR, M.D.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF PETER C. WHYBROW, M.D.**<br><br>Judge:         Hon. Fernando M. Olguin<br>Date:          July 9, 2015<br>Time:          10:00 a.m.<br>Courtroom:  22<br><br>Trial Date:   None set |

TO PLAINTIFF, DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July, 9, 2015 at 10:00 a.m., or as soon thereafter as the parties may be heard in Courtroom 22 of the above-entitled Court, located at 312 N. Spring Street, Fifth Floor, Los Angeles, California, 90012, the Honorable Fernando M. Olguin presiding, Defendant James Edward Spar, M.D. ("Defendant" or "Dr. Spar") will and hereby does move to strike the Third, Eighth, and Eleventh Causes of Action ("the state-law claims") in the First Amended Complaint ("Complaint") filed by Plaintiff Donald Sterling ("Plaintiff" or "Sterling"), pursuant to California Code of Civil Procedure Section 425.16.

The Motion is made on the grounds that (1) the state-law claims arise from acts in the furtherance of Dr. Spar's right to petition or free speech under the United States or California Constitution in connection with a public issue; and (2) Plaintiff cannot establish that there is a probability that he will prevail on these claims against Dr. Spar because the state-law claims are barred by the Eleventh Amendment, there is no basis for exercising pendent jurisdiction over those claims, Dr. Spar's actions were absolutely privileged under the litigation privilege (California Civil Code Section 47(b)), and Dr. Spar's actions were authorized under California Evidence Code Section 1158 and California Civil Code Section 56.28.

The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all exhibits attached hereto, all pleadings and papers on file herein, and such further evidence and argument as may be presented prior to or at the hearing on the Motion.

In compliance with C.D. Cal. L.R. 7-3, this motion was filed after Defendant's counsel sent Plaintiff's counsel a meet-and-confer letter on April 24, 2015. Defendant's counsel sent Plaintiff's counsel follow-up emails on April 28th and May 6th. Defendant's counsel has not responded substantively to the letter.

1    DATED: May 11, 2015                    MUNGER, TOLLES & OLSON LLP

2

3
                                           By:        /s/ Bradley S. Phillips
4                                                   Bradley S. Phillips

5                                          Attorneys for Defendant
                                           JAMES EDWARD SPAR, M.D.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    FACTS AS ALLEGED IN THE COMPLAINT ............................................ 2

II.   ARGUMENT ........................................................................................... 3

    A.    Plaintiff's Complaint Is Subject to a Motion to Strike Under Civ. Proc. Code § 425.16 ................................................................. 3

        1.    Section 425.16 Applies to State-Law Causes of Action in Federal Court .................................................................. 3

        2.    Plaintiff's State-Law Claims Arise From Dr. Spar's Protected Activity Pursuant to Subdivision (e) of the Anti-SLAPP Statute .................................................. 4

    B.    There is No Probability that Plaintiff Will Prevail Because This Court Does Not Have Jurisdiction, the Litigation Privilege Bars the Complaint, and Plaintiff Authorized the Disclosures ...................... 8

        1.    Plaintiff's State-Law Claims Are Barred by the Eleventh Amendment ................................................. 8

        2.    The Court Lacks or, in the Alternative, Should Not Exercise Pendent Jurisdiction over Plaintiff's State-Law Claims Against Dr. Spar ................................. 10

        3.    Dr. Spar's Actions Are Protected by the Litigation Privilege ............................................................... 12

        4.    Plaintiff Authorized Disclosure of Dr. Spar's Medical Report Pursuant to Cal. Evid. Code 1158 ................... 17

III.  CONCLUSION ...................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Actmedia, Inc. v. Stroh*,
    830 F.2d 957 (9th Cir. 1986) .................................................................... 8

*BV Engineering v. University of California, Los Angeles*,
    858 F.2d 1394 (9th Cir. 1988) .................................................................. 8

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) .................................................................................. 12

*Exec. Software N. Am., Inc. v. U.S. Dist. Ct.*,
    24 F.3d 1545 (9th Cir. 1994)
    *overruled on other grounds by California Dept. of Water*
    *Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2009) ........................... 12

*Gilder v. PGA Tour, Inc.*,
    936 F.2d 417 (9th Cir. 1991) .................................................................. 10

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
    63 F.Supp.2d 1127 (N.D. Cal. 1999) ...................................................... 4

*Grid Sys. Corp. v. Texas Instruments Inc.*,
    771 F. Supp. 1033 (N.D.Cal. 1991) ........................................................ 11

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) .............................................................. 3, 4

*Jackson v. Hayakawa*,
    682 F.2d 1344 (9th Cir. 1982) .................................................................. 8

*Pennhurst State School & Hosp. v. Halderman*,
    465 U.S. 89 (1984) .................................................................................... 8

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ................................................................ 10

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036 (9th Cir. 2003) ................................................................ 10

*Seaton v. Mayberg*,
    610 F. 3d 530 (9th Cir. 2010) ................................................................ 10

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Summit Media, LLC v. City of Los Angeles*,
530 F.Supp.2d 1084 (C.D.Cal. 2008) ................................................................ 3

*United States ex rel Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) ...................................................................... 3, 4

*Webb v. Smart Document Solutions, LLC*,
499 F. 3d 1078 (9th Cir. 2007) ...................................................................... 10

**STATE CASES**

*Bernstein v. Alameda-Contra Costa Medical Ass'n*,
139 Cal. App. 2d 241 (1956) ................................................................. 15, 16

*Briggs v. Eden Council for Hope & Opportunity*,
19 Cal. 4th 1106 (1999) ........................................................................ 5, 7, 8

*Cang Wang v. Heck*,
203 Cal. App. 4th 677 (2012) ...................................................................... 16

*Carden v. Getzoff*,
190 Cal. App. 3d 907 (1987) ...................................................................... 15

*City of Cotati v. Cashman*,
29 Cal. 4th 69 (2002) ................................................................................... 5

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
47 Cal. App. 4th 777 (1996) ...................................................................... 5, 7

*Equilon Enters. v. Consumer Cause, Inc.*,
29 Cal. 4th 53 (2002) ............................................................................... 3, 5

*Flatley v Mauro*,
39 Cal. 4th 299 (2006) ................................................................................. 6

*Fremont Reorganizing Corp. v. Faigin*,
198 Cal. App. 4th 1153 (2011) ...................................................................... 7

*Gootee v. Lightner*,
224 Cal. App. 3d 587 (1990) ...................................................................... 16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Jacob B. v County of Shasta*,
    40 Cal. 4th 948 (2007) ................................................................ 13, 14, 15

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) .................................................................. 13

*Laborde v. Aronson*,
    92 Cal. App. 4th 459 (2001) .................................................................. 15

*Mendoza v. ADP Screening and Selection Servs., Inc.*,
    182 Cal. App. 4th 1644 (2010) ................................................................ 7

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ............................................................................... 6

*People ex rel. Gallegos v. Pacific Lumber Co.*,
    158 Cal. App. 4th 950 (2008) ................................................................ 13

*Rusheen v. Cohen*,
    37 Cal. 4th 1048 (2006) ......................................................................... 13

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990) ............................................................................ 13

**FEDERAL STATUTES**

28 U.S.C. § 1367 ............................................................................................ 10

28 U.S.C. § 1367(a) ....................................................................................... 11

28 U.S.C. § 1367(c) ....................................................................................... 11

28 U.S.C. § 1367(c)(4) ................................................................................... 12

**STATE STATUTES**

Cal. Civ. Code § 47(b) ............................................................................. passim

Cal. Civ. Code § 56.10 .................................................................................. 17

Cal. Civ. Code § 56.28 .................................................................................. 17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Cal. Code Civ. Proc. § 425.16 ................................................................passim

Cal. Code Civ. Proc. § 425.16(a) ..................................................................5

Cal. Code Civ. Proc. § 425.16(b)(1) .............................................................4

Cal. Code Civ. Proc. § 425.16(e) ..............................................................5, 7

Cal. Evid. Code § 1158 ..........................................................2, 12, 17, 18

**FEDERAL RULES**

Rule 12 ...........................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Donald Sterling ("Plaintiff" or "Sterling") alleges four purported claims for relief against Defendant James Edward Spar, M.D. ("Defendant" or "Dr. Spar"), based on Dr. Spar's allegedly unauthorized disclosure of the results of his forensic medical examination of Plaintiff in connection with Probate Court proceedings regarding Plaintiff's mental capacity.  Specifically, Sterling claims that, by disclosing that information, Dr. Spar breached a fiduciary duty, committed an unfair business practice under California Business and Professions Code Section 17200, *et seq.*, and violated the federal Health Insurance Portability and Accountability Act ("HIPAA") and California's Confidentiality of Medical Information Act ("CMIA").

Plaintiff's three state-law claims—for breach of fiduciary duty, unfair business practices, and violation of CMIA—all arise from protected petitioning or speech activity and are therefore covered by section 425.16 of the California Code of Civil Procedure (the "anti-SLAPP statute").  That statute applies to state-law claims filed in federal court based on diversity jurisdiction or pendent to federal-question claims and subjects them to a special motion to strike.  The Court must dismiss the claims unless Plaintiff establishes that there is a probability that he will prevail on the merits.

Here, there is no probability that Plaintiff will prevail on his claims against Dr. Spar.  First, Plaintiff's state-law claims are barred by the Eleventh Amendment because Dr. Spar is an employee of the University of California Los Angeles ("UCLA") who was at all times acting within the scope of his employment. Second, since Plaintiff's only federal claim against Dr. Spar—the HIPAA claim— must be dismissed because there is no private right of action under HIPAA, this Court may not exercise pendent jurisdiction over Plaintiff's state-law claims against Dr. Spar because those claims do not share a common nucleus of operative fact with Plaintiff's federal claims against other defendants.  Third, Dr. Spar's actions were

1  absolutely privileged under California Civil Code Section 47(b).  Finally, Plaintiff

2  authorized Defendant's actions pursuant to California Evidence Code Section 1158

3  and Section 7.5(c) of the Sterling Family Trust ("Trust").

4        Because Plaintiff cannot show a probability that he will prevail on his

5  state-law claims, this Court should grant Dr. Spar's motion to strike.

6  **I.        FACTS AS ALLEGED IN THE COMPLAINT**

7        The principal gravamen of Plaintiff's Complaint is that the National

8  Basketball Association ("NBA") unlawfully forced the sale of the Los Angeles

9  Clippers by the Trust.  *See, e.g.*, Compl. ¶¶ 10, 11.  Plaintiff also alleges that, in

10 collaboration with the NBA, his wife, defendant Rochelle Sterling, sought to have

11 him removed as a co-trustee of the Trust to enable a sale of the Clippers without his

12 consent.  *See, e.g.*, Compl. ¶¶ 29, 30.  Plaintiff alleges that, on May 22, 2014, he

13 attended an appointment arranged by Ms. Sterling during which Dr. Spar conducted

14 a "neurological" examination of Plaintiff (it was in fact a psychiatric examination)

15 and found him to be incapacitated for purposes of serving as a co-trustee.  Compl.

16 ¶ 32.

17        Plaintiff does not allege that he did not consent to the examination by

18 Dr. Spar.  In fact, Section 7.5(c) of the Trust Agreement, which is attached to the

19 Complaint as Exhibit 2, provides that "[a]ny individual who is deemed incapacitated

20 . . . shall cease to serve as a Trustee of all trusts administered under this document."

21 Compl. ¶ 16 & Ex. 2.  That section further provides that "[a]ny individual who

22 agrees to serve as a Trustee, (A) shall cooperate in any examination reasonably

23 appropriate to carry out the provisions of this Paragraph 7.5.c, (B) waives the

24 doctor-patient and/or psychiatrist-patient privilege with respect to the results of such

25 examination, and (C) shall allow a Co-Trustee . . . to review the individual's

26 individually identifiable health information or other medical records, waiving any

27 privacy rights governed by [HIPAA] . . . ."  *Id.*

28

Plaintiff alleges that Dr. Spar failed to explain the "real" purpose of the examination, which Plaintiff concedes was to determine whether Plaintiff was incapacitated for purposes of removing him as co-trustee of the Trust under Section 7.5(c).  Compl. ¶ 109.  Plaintiff alleges that Dr. Spar "disseminated" the results of the examination on May 27, 2014 without Plaintiff's authorization and express written consent.  Compl. ¶ 34.  Plaintiff further alleges that Ms. Sterling used Dr. Spar's medical report, among other things, in judicial proceedings to have Plaintiff removed as a co-trustee of the Trust pursuant to Sections 7.5(c) and 10.24(b) of the Trust.  Compl. ¶ 35.

Based on these allegations, Plaintiff asserts four causes of action against Dr. Spar, for breach of fiduciary duty, unfair business practices under California Business & Professions Code section 17200 *et seq.*, violation of HIPAA, and violation of CMIA.

## II.   ARGUMENT

### A.   Plaintiff's Complaint Is Subject to a Motion to Strike Under Civ. Proc. Code § 425.16

#### 1.   Section 425.16 Applies to State-Law Causes of Action in Federal Court

The Ninth Circuit has held that California's anti-SLAPP[1] statute, Civ. Proc. Code § 425.16, applies to state-law claims brought in federal district court. *United States ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999); *see also Summit Media, LLC v. City of Los Angeles*, 530 F.Supp.2d 1084, 1094 (C.D. Cal. 2008).  A federal-court defendant may file a special motion to strike state-law claims regardless of whether those claims are in federal court based on diversity jurisdiction or are pendent to federal-question claims.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2 (9th Cir. 2010) ("[W]e have long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant

---

[1] "SLAPP" is an acronym for "Strategic Lawsuit Against Public Participation." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 57 n.1 (2002).

1  to their diversity jurisdiction") (citing *Lockheed*, 190 F.3d at 970-73); *Globetrotter*

2  *Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127, 1130 (N.D. Cal.

3  1999) ("[I]t appears that under the *Erie* analysis set forth in *Lockheed* the anti-

4  SLAPP statute may be applied to state law claims, which, as in this case, are

5  asserted pendent to federal question claims").  The anti-SLAPP statute does not,

6  however, apply to claims based on federal law.  *Hilton*, 599 F.3d at 901 ("[A]

7  federal court can only entertain anti-SLAPP special motions to strike in connection

8  with state law claims.").[2]

9        **2.    Plaintiff's State-Law Claims Arise From Dr. Spar's**
              **Protected Activity Pursuant to Subdivision (e) of the Anti-**
10             **SLAPP Statute**

11             Section 425.16 of the California Code of Civil Procedure  provides, in

12  relevant part:

13        A cause of action against a person arising from any act of that person in

14        furtherance of the person's right of petition or free speech under the

15        United States or California Constitution in connection with a public

16        issue shall be subject to a special motion to strike, unless the court

17        determines that the plaintiff has established that there is a probability

18        that the plaintiff will prevail on the claim.

19  Code Civ. Proc. § 425.16(b)(1).  The statute further provides:

20        As used in this section, "act in furtherance of a person's right of

21        petition or free speech under the United States or California

22        Constitution in connection with a public issue" includes:  (1) any

23        written or oral statement or writing made before a legislative,

24        executive, or judicial proceeding or any other official proceeding

25  _____

26  [2] Plaintiff's Complaint alleges both federal-question and diversity jurisdiction.
    Compl. ¶ 13.  There is, however, no diversity jurisdiction because, as Plaintiff
27  expressly alleges, Plaintiff and Dr. Spar are both residents (and therefore citizens for
    diversity purposes) of California, as are two other defendants.  Compl. ¶ ¶ 1, 5-7.
28

1    authorized by law; (2) any written or oral statement or writing made in

2    connection with an issue under consideration or review by a . . . judicial

3    body or any other official proceeding authorized by law . . . ; (4) or any

4    other conduct in furtherance of the exercise of the constitutional right

5    of petition or the constitutional right of free speech in connection with a

6    public issue or an issue of public interest.

7    *Id.*, subd. (e).

8          The statute further requires that section 425.16 be "construed broadly,"

9    *id.*, subd. (a), and the California Supreme Court has repeatedly held that section

10   425.16 must be enforced according to its plain language. *See Equilon*, 29 Cal. 4th at

11   59 ("[W]e follow the Legislature's intent, as exhibited by the plain meaning of the

12   actual words of the law."); *City of Cotati v. Cashman*, 29 Cal. 4th 69, 74-75 (2002).

13         A cause of action is subject to the anti-SLAPP statute when the acts

14   underlying the cause of action constitute speech or petitioning activity. *Cotati*, 29

15   Cal. 4th at 78.  Examples of protected activity include statements made to a judicial

16   body, statements made in connection with judicial proceedings, or any other

17   protected speech or petitioning conduct. *Id.*  Statements made in anticipation of

18   bringing a judicial or other official proceeding also constitute protected activity. *See*

19   *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999)

20   ("Just as communications preparatory to or in anticipation of the bringing of an

21   action or other official proceeding are within the protection of the litigation privilege

22   of Civil Code section 47, subdivision (b) . . . such statements are equally entitled to

23   the benefits of section 425.16.") (quoting *Dove Audio, Inc. v. Rosenfeld, Meyer &*

24   *Susman*, 47 Cal. App. 4th 777, 784 (1996).  And, when a statement is made in

25   connection with or during a judicial or other official proceeding, the SLAPP

26   defendant need not otherwise demonstrate that the statement involved a public issue

27   or an issue of public interest. *Briggs*, 19 Cal. 4th at 1123.  "[T]he critical

28   consideration is whether the cause of action is *based on* the defendant's protected

free speech or petitioning activity." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002) (emphasis in original).[3]

Plaintiff's Complaint establishes that his state-law claims against Dr. Spar are based on protected speech and petitioning activity, namely Dr. Spar's disclosure of the results of his medical examination of Plaintiff in connection with the judicial proceedings concerning Plaintiff's capacity to serve as a co-trustee.  All three of Plaintiff's state-law claims are predicated on Defendant's allegedly unauthorized dissemination of that information to Ms. Sterling and her attorneys in connection with their judicial efforts to have Plaintiff removed as a co-trustee. Plaintiff alleges that, by May 22, 2014—the date of Dr. Spar's examination of Plaintiff—Ms. Sterling and her lawyers had "arranged for an alternative scheme to supplant [Plaintiff's] ownership interest in the Clippers by removing him as a co-trustee through a finding of incapacity . . . ."  Compl. ¶ 30.  Plaintiff alleges that the purpose of Dr. Spar's examination of him—like the prior examination by co-defendant Dr. Platzer—was to support Ms. Sterling's effort to have the Probate Court remove Plaintiff as a co-trustee.  Compl. ¶¶ 31, 32.  Plaintiff further alleges that Ms. Sterling used Dr. Spar's medical report to have Plaintiff removed as co-trustee by the Probate Court.  Compl. ¶ 35.

Each of these alleged acts was "in furtherance of a person's right of petition or free speech" within the meaning of the anti-SLAPP statute.  All were done preparatory to, in anticipation of, in connection with, or in a judicial

_____

[3] The California Supreme Court and Courts of Appeal "have looked to the litigation privilege [Civil Code section 47(b)] as an aid in construing the scope of subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry—that is, by examining the scope of the litigation privilege to determine whether a given communication falls within the ambit of subdivisions (e)(1) and (2)."  *Flatley v Mauro*, 39 Cal. 4th 299, 322-23 (2006).  As demonstrated below, Dr. Spar's conduct falls within the scope of the litigation privilege.  *See infra*, § II.B.3.

1    proceeding and therefore fall squarely within section 425.16(e) and the case law

2    interpreting it.[4]

3          The fact that Dr. Spar's report may have been prepared and

4    disseminated prior to the institution of the judicial proceeding in Probate Court does

5    not render Dr. Spar's acts unprotected.  The California Supreme Court has held that

6    activity in anticipation of a judicial or other official proceeding is protected under

7    section 425.16.  *See Briggs*, 19 Cal. 4th at 1115 (stating that communications made

8    in anticipation of litigation are "entitled to the benefits of section 425.16") (quoting

9    *Dove Audio, Inc.* 47 Cal. App. 4th at 784).  In *Briggs*, the plaintiffs were landlords

10   who rented their property to a number of tenants.  The tenants sought the

11   defendant's expertise in resolving housing issues, namely the inadequate living

12   conditions of the plaintiffs' properties.  The plaintiffs' complaint alleged that the

13   defendant's personnel made defamatory statements in advising the plaintiffs' tenants

14   on pending or anticipated legal actions against the plaintiffs.  *Briggs*, 19 Cal. 4th at

15   1114.  The Court ruled both that, as noted, a defendant need not demonstrate that his

16   alleged statement concerned an issue of public significance when the statement was

17   made in connection with or during a judicial or other official proceeding, *id.* at

18   1123, and that all of the defendant's statements, including those made before but in

19   anticipation of a judicial proceeding, constituted protected activity within section

20   425.16(e).  *Id.* at 1115.

21         Plaintiff's state-law claims against Dr. Spar are based on allegations

22   similar to those in *Briggs*.  Dr. Spar's report was prepared, disclosed, and used in

23   _____

24   [4] Plaintiff's allegation that Dr. Spar's disclosures were illegal in that they allegedly

25   violated HIPAA and CMIA does not mean those disclosures do not constitute
     protected activity for purposes of the anti-SLAPP statute.  *See Fremont*

26   *Reorganizing Corp. v. Faigin*, 198 Cal. App. 4th 1153, 1169 (2011) (holding that

27   the rule excluding conduct that is "illegal as a matter of law" from the protection of
     the anti-SLAPP statute "is limited to criminal conduct"); *Mendoza v. ADP*

28   *Screening and Selection Servs., Inc.*, 182 Cal. App. 4th 1644, 1654 (2010) (same).

connection with anticipated and pending judicial proceedings.  Thus, just as the *Briggs* Court found that defendant's alleged statements made in connection with anticipated and pending litigation were protected, this Court should find that Dr. Spar's disclosures of the results of his examination of Plaintiff are protected.  As in *Briggs*, all of the state-law claims against Dr. Spar arise from statements made "in connection with issues under consideration or review by official bodies . . . or civil courts."  *Id*. at 1115.  They are therefore subject to a special motion to strike.

**B.**  **There is No Probability that Plaintiff Will Prevail Because This Court Does Not Have Jurisdiction, the Litigation Privilege Bars the Complaint, and Plaintiff Authorized the Disclosures**

**1.**  **Plaintiff's State-Law Claims Are Barred by the Eleventh Amendment**

The Eleventh Amendment bars claims in federal court against state officials alleging violations of state law because "the relief sought and ordered has an impact directly on the state itself."  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).  In *Pennhurst*, the Supreme Court ruled that the Eleventh Amendment's protection extends to state-law claims against state officials "brought into federal court under pendent jurisdiction."  *Id.* at 121.  Allowing such a claim to proceed in federal court would "not vindicate the supreme authority of federal law" and it would greatly intrude on state sovereignty.  *Actmedia, Inc. v. Stroh*, 830 F.2d 957, 964 (9th Cir. 1986) (quoting *Pennhurst*, 465 U.S. at 106).

The Ninth Circuit has held that "the University of California and the Board of the Regents are considered to be instrumentalities of the state . . . and therefore enjoy the same immunity as the state of California" for purposes of the Eleventh Amendment.  *BV Engineering v. University of California, Los Angeles*, 858 F.2d 1394, 1396 (9th Cir. 1988) (quoting  *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982).  Dr. Spar was at all relevant times an employee of UCLA acting within the scope of his employment.  *See* Declaration of Peter C. Whybrow,

M.D.  Dr. Whybrow is the physician-in-chief of the Stewart and Lynda Resnick Neuropsychiatric Hospital at UCLA and the executive chair of the Department of Psychiatry and Biobehavioral Sciences at the David Geffen School of Medicine at UCLA.  *Id.* ¶ 1.  He testifies that Dr. Spar is a professor in that department and that Dr. Spar's duties include patient care and teaching, administration, creative academic activity, and forensic consultation and testimony.  *Id.* ¶ 2.  As Dr. Whybrow testifies:

> Since 1981 Dr. Spar has provided forensic consultation to attorneys, mainly in areas related to civil competency.  He is retained as an expert consultant and witness in will and trust contests and contests related to contracts and conservatorships, and also evaluates the decisional (including testamentary and contractual) and functional capacity of living individuals referred to him by attorneys and courts.  . . .
>
> All of the activities described above fall within the scope of Dr. Spar's employment by the University of California and he performs them as such an employee.  The fees generated by both his patient care and his forensic work have been turned over to the University pursuant to applicable University regulations.  This includes his forensic examination of Donald Sterling, his testimony with respect to Mr. Sterling's competency, and any fees generated by that work.

*Id.* ¶¶ 3, 4.  Because Dr. Spar was acting within the scope of his employment at UCLA, Plaintiff's state-law claims against him are barred by the Eleventh Amendment.

Plaintiff cannot avoid the Eleventh Amendment bar to his claims based on his conclusory (and false) allegation that Defendant "was not acting under color of law or as an agent of the State of California." Compl. ¶ 7.  Once a moving party introduces evidence to rebut a jurisdictional allegation in the complaint, the burden

shifts to plaintiff to establish subject-matter jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).  The Whybrow Declaration establishes that Dr. Spar was acting within the scope of his employment when he engaged in the allegedly wrongful conduct described in Plaintiff's Complaint. Absent competent evidence from Plaintiff establishing otherwise, this Court must find that Dr. Spar was acting within the scope of his employment and that the state-law claims against him are therefore barred by the Eleventh Amendment.

## 2. The Court Lacks or, in the Alternative, Should Not Exercise Pendent Jurisdiction over Plaintiff's State-Law Claims Against Dr. Spar

This Court may exercise pendent jurisdiction over Plaintiff's state-law claims against Dr. Spar only if there exists a sufficiently substantial federal claim with which those state-law claims share a common nucleus of operative fact.  *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991); *see also* 28 U.S.C. § 1367.  A federal claim is insubstantial for this purpose if it is absolutely devoid of merit or obviously frivolous.  *Id*.  As demonstrated more fully in Dr. Spar's Rule 12 motion, the sole federal claim against Dr. Spar, the HIPAA claim, is absolutely devoid of merit and obviously frivolous because there is no private right of action under HIPAA.  *Seaton v. Mayberg*, 610 F. 3d 530, 533 (9th Cir. 2010); *Webb v. Smart Document Solutions, LLC*, 499 F. 3d 1078, 1082 (9th Cir. 2007).  Thus, the Court may exercise pendent jurisdiction over the state-law claims against Dr. Spar only if Plaintiff's federal claims against the NBA Defendants ("the NBA federal claims") are substantial *and* the state-law claims against Dr. Spar share a common nucleus of operative facts with them.

Dr. Spar does not address here whether Plaintiff's NBA federal claims are substantial but instead refers the Court to the motion to dismiss filed by those defendants.  If the Court finds that those claims are insubstantial, the Court must dismiss the state-law claims against Dr. Spar.

The state-law claims against Dr. Spar must be dismissed, moreover, regardless of whether the NBA federal claims are substantial, because the state-law claims do not share a common nucleus of operative facts with those federal claims. There are two NBA federal claims:  the Fourth, for violations of due process; and the Fifth, for violations of Section 1 of the Sherman Act.  The due-process claim relates to an allegedly illegal tape recording made by an individual named "Stiviano," the NBA's use of that tape recording, and various proceedings and sanctions against Plaintiff by the NBA.  Dr. Spar's examination of Plaintiff and his disclosure of the results of that examination in connection with a *different* proceeding—the Probate Court proceeding with respect to his capacity as co-trustee—are nowhere mentioned in the due-process claim and are irrelevant to it, just as the facts alleged in the due-process claim are irrelevant to the claims against Dr. Spar.  The antitrust claim relates to allegedly illegal restraints on competition in the market for ownership of NBA franchises.  Again, Dr. Spar's examination of Plaintiff and his disclosure of the results are nowhere mentioned in the antitrust claim and are irrelevant to it, just as the facts alleged in the antitrust claim are irrelevant to the claims against Dr. Spar.  Because the state-law claims against Dr. Spar do not share a common nucleus of operative fact with the NBA federal claims, the state-law claims must be dismissed for lack of jurisdiction.  *See Grid Sys. Corp. v. Texas Instruments Inc.*, 771 F. Supp. 1033, 1043 (N.D. Cal. 1991) (dismissing state-law contract claim related to patent-license agreement because it did not share common nucleus of operative facts with federal antitrust and patent claims, even though all the claims concerned the same patents and were between the same parties).

Even were the Court to conclude that the state-law claims against Dr. Spar share a common nucleus of operative facts sufficient to *allow* the exercise of pendent jurisdiction under 28 U.S.C. § 1367(a), the Court should exercise its discretion to decline such jurisdiction under 28 U.S.C. § 1367(c).  Here, exceptional

circumstances exist such that there are compelling reasons for the Court to decline pendent jurisdiction.  *See* 28 U.S.C. § 1367(c)(4).  There are no federal claims against Dr. Spar; the facts underlying the claims alleged against him are narrow—relating only to disclosure of the results of his examination of Plaintiff—while the facts underlying the NBA federal claims are vastly broader; and the claims against Dr. Spar raise a number of state-law issues that are not germane to the NBA federal claims, including among others issues related to California's medical privacy statute (CMIA), California's litigation-privilege statute (Civil Code § 47(b), and the California Evidence Code (section 1158).  Declining jurisdiction will therefore "'best accommodate[] the values of economy, convenience, fairness, and comity'." *Exec. Software N. Am., Inc. v. U.S. Dist. Ct.*, 24 F.3d 1545, 1557 (9th Cir. 1994) *overruled on other grounds by California Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2009) (holding that district court's decision to decline supplemental jurisdiction must be challenged on an appeal rather than a petition for writ of mandamus) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).

### 3.  Dr. Spar's Actions Are Protected by the Litigation Privilege

California Civil Code section 47(b), which codifies the litigation privilege, provides in relevant part:

> A privileged publication or broadcast is one made: (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, . . . .

The privilege extends to:

> [A]ny communication (1) made in judicial or quasi-
> judicial proceeding; (2) by litigants or other participants
> authorized by law; (3) to achieve the objects of the
> litigation; and (4) that have some connection or logical
> relation to the action.

*Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006).  "[T]he privilege has been broadly applied.  It is absolute and applies regardless of malice." *Jacob B. v County of Shasta*, 40 Cal. 4th 948, 1008 (2007).  "The privilege 'applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.'" *Id.* at 1007 (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990)).  *See also People ex rel. Gallegos v. Pacific Lumber Co.*, 158 Cal. App. 4th 950, 958 (2008) (stating that the litigation privilege is interpreted broadly and applies to any communication or publication "having 'some relation' to a judicial [or quasi-judicial] proceeding") (quoting *Kashian v. Harriman*, 98 Cal. App. 4th 892, 912-13 (2002)).  Moreover, the privilege applies "to any communication, whether or not it amounts to a publication" and to "all torts except malicious prosecution." *Silberg*, 50 Cal. 3d at 212.

The allegations in Plaintiff's Complaint establish that the litigation privilege applies to Dr. Spar's conduct.  Plaintiff's state-law claims against Dr. Spar are all based on Dr. Spar's disclosure of the results of his forensic medical examination of Plaintiff in connection with the judicial proceedings concerning Plaintiff's capacity to serve as a co-trustee.  As explained above, all three claims are predicated on Defendant's allegedly unauthorized dissemination of that information to Ms. Sterling and her attorneys in connection with their judicial efforts to have Plaintiff removed as a co-trustee.  Thus, Plaintiff alleges that, by May 22, 2014—the date of Dr. Spar's examination of Plaintiff—Ms. Sterling and her lawyers had

1   "arranged for an alternative scheme to supplant [Plaintiff's] ownership interest in

2   the Clippers by removing him as a co-trustee through a finding of incapacity . . . ."

3   Compl. ¶ 30.  Plaintiff himself alleges that the purpose of Dr. Spar's examination of

4   him was to support Ms. Sterling's effort to have the Probate Court remove Plaintiff

5   as a co-trustee.  Compl. ¶¶ 31, 32.  Plaintiff further alleges that Ms. Sterling used

6   Dr. Spar's medical report to have Plaintiff removed as co-trustee by the Probate

7   Court.  Compl. ¶ 35.  Thus, on the face of the Complaint, Dr. Spar's allegedly

8   wrongful conduct comprised communications in connection with judicial

9   proceedings and is absolutely privileged under section 47(b).

10          Numerous decisions of the California Supreme Court and Courts of

11  Appeal provide compelling support for this conclusion.  In *Jacob B. v. County of*

12  *Shasta*, the plaintiff had sued the defendant for invasion of privacy based upon a

13  letter, provided by the defendant to the plaintiff's former sister-in-law, that

14  summarized the defendant's investigation of the plaintiff's alleged molestation of

15  his nephew and which was to be used in a pending family law proceeding.  *Id.* at

16  954.  The California Supreme Court held that the letter was privileged under section

17  47(b), because it was a "communication" made "in the context of a judicial

18  proceeding," and "furthered the objects of the litigation, since the information it

19  conveyed had relevance to a family law visitation dispute."  *Id.* at 956.  The

20  defendant had, in preparing the letter, accessed and disclosed information about the

21  plaintiff's alleged actions as a juvenile from the statewide victims-of-crime (VOX)

22  computer database.  *Id.* at 952-953.  The plaintiff argued that accessing of the

23  information was not privileged because it was "noncommunicative" and that

24  disclosure of the information was not privileged because it "broke confidentiality

25  laws," specifically a Welfare and Institutions Code provision governing juvenile

26  records.  *Id.* at 957.  The Supreme Court rejected both arguments, holding that "the

27  litigation privilege extends to those noncommunicative actions which are

28  necessarily related to [the privileged] communicative act" and that the letter was

privileged "even if we assume that the disclosure violated juvenile record confidentiality laws." *Id*. at 957-58; *see also id*. at 959 (holding that litigation privilege "extends to communications otherwise within section 47(b)'s reach . . . that might be deemed confidential").  Here, Plaintiff may similarly argue that Dr. Spar's conduct is not privileged because the examination of Plaintiff was "noncommunicative" or because the disclosure of the results of the examination violated the confidentiality provisions of HIPAA or CMIA.  *Jacob B*. disposes of both such arguments: Dr. Spar's examination, like the defendants' investigation in *Jacob B.*, was necessarily related to the disclosures that are the basis for Plaintiff's claims; and Dr. Spar's disclosures of the examination results for purposes of the Probate Court proceeding are, like the defendant's letter for the family law proceeding in *Jacob B.*, privileged regardless of whether they violated any confidentiality laws (they did not).

The California Courts of Appeal have applied the absolute privilege of section 47(b) in numerous situations directly analogous to the one before this Court. In *Carden v. Getzoff*, 190 Cal. App. 3d 907 (1987), the plaintiff had sued the defendant for abuse of process and intentional infliction of emotional distress based upon the defendant's allegedly false expert report and testimony  in the plaintiff's divorce proceeding.  *Id*. at 909.  The court held that "both the document prepared by [defendant] and [defendant's] testimony at the dissolution proceedings are covered by the absolute privilege of section [47(b)]."  *Id*. at 913.  Similarly, in *Laborde v. Aronson*, 92 Cal. App. 4th 459 (2001), the plaintiff had sued a psychologist retained to conduct a custody evaluation in the plaintiff's marital dissolution proceeding.  *Id*. at 461.  The defendant had interviewed various family members, prepared an evaluation, discussed the results with the parties, and ultimately testified in the court proceeding.  *Id*. at 461-62.  The court of appeal held the defendant's conduct was absolutely privileged under section 47(b).  In *Bernstein v. Alameda-Contra Costa Medical Ass'n*, 139 Cal. App. 2d 241 (1956), the plaintiff, a pathologist, had been

1   expelled from a medical association based upon allegedly unethical statements he

2   made in a report prepared at the request of a widow for use as evidence in support of

3   her claim for benefits under the workmen's compensation law.  *Id*. at 243.  The

4   court of appeal held that, because "[the plaintiff's] report was requested by a litigant

5   for use as evidence in a judicial  proceeding; was prepared and delivered by the

6   [plaintiff], in response to that request, solely for that purpose; and was put to that

7   very use by the litigant," the plaintiff's conduct was privileged under section 47(b).

8   *Id.* at 245; *see also Gootee v. Lightner*, 224 Cal. App. 3d 587, 591 (1990) (applying

9   litigation privilege to psychologist's allegedly wrongful conduct in course of

10   psychological testing and evaluation performed for purposes of testifying in a

11   custody dispute).  And, in *Cang Wang v. Heck*, 203 Cal. App. 4th 677 (2012), the

12   court held that an expert's DMV evaluation form, which summarized the

13   defendant's medical opinion regarding a driver's capacity to drive safely, "fell

14   within the meaning of section 47(b)" because it was prepared "for use in a quasi-

15   judicial setting by a government agency" to evaluate the driving status of the driver.

16   203 Cal. App. 4th 677, 684 (2012).  Here, similarly, Dr. Spar's examination and

17   report concerning Plaintiff's capacity was needed to "achieve the object of the . . .

18   hearing," which was to determine whether Plaintiff should be removed as co-trustee.

19   *See id*. at 685.

20         Dr. Spar was requested to perform an examination of Plaintiff—an

21   examination to which Plaintiff had consented in the Trust Agreement—and to

22   disclose the results of that examination to Ms. Sterling and her lawyers and then to

23   the court—disclosures to which Plaintiff had also consented—all in connection with

24   judicial proceedings to determine whether Plaintiff should be removed as a co-

25   trustee of the Trust.  As the cases discussed above unequivocally demonstrate, Dr.

26   Spar's conduct is absolutely privileged under Civil Code section 47(b).

27

28

1

### 4.      Plaintiff Authorized Disclosure of Dr. Spar's Medical Report Pursuant to Cal. Evid. Code 1158

2

3          California Civil Code section 56.28 expressly exempts disclosures

4   made pursuant to California Evidence Code section 1158 from the CMIA, including

5   the requirements of Civil Code 56.10.  *See* Cal. Civ. Code § 56.28 ("Nothing in this

6   part [CMIA] shall be deemed to affect existing laws . . . relating to disclosures made

7   pursuant to Section 1158 of the Evidence Code . . . .").  Evidence Code section 1158

8   provides in relevant part:

9          Whenever, prior to the filing of any action . . . an attorney at law or his

10         or her representative presents a written authorization therefor signed by

11         an adult patient . . . or a copy thereof, a physician . . . shall make all of

12         the patient's records under his . . . custody or control available for

13         inspection and copying by the attorney at law or his, or her,

14         representative, promptly upon the presentation of the written

15         authorization."

16         Under section 7.5(c) of the Trust, any person deemed incapacitated

17   under section 10.24 "shall cease to serve as a Trustee" of the trust.  Compl. Ex. 2,

18   Section 7.5(c).  Section 10.24(b) of the Trust provides that a person may be

19   determined incapacitated and removed based upon "two reports from licensed

20   physicians who regularly practice in areas involving capacity."  Ex. 1.[5]  Section

21   7.5(c) provides that any person who agrees to serve as Trustee "shall cooperate in

22   any examination reasonably appropriate to carry out the provisions of this Paragraph

23   7.5(c)."  Compl. Ex. 2.  The provision also contains a broad medical-privilege

24   waiver, which states that any Trustee cooperating in an examination to determine his

25

26   _____

27   [5] The copy of the Trust attached to Plaintiff's Complaint as Exhibit 2 is incomplete
     and omits section 10.24 of the Trust.  A true and correct copy of section 10.24 is
28   attached hereto as Exhibit 1.

1 | or her capacity "shall allow a Co-Trustee" to review his medical records  *Id.* at

2 | Section 7.5(c)(C).

3 |        In signing the Trust agreement, Plaintiff agreed to the provisions set

4 | forth in sections 7.5 and 10.24.  Specifically, he undertook a legal duty not only to

5 | undergo Dr. Spar's neurological examination, but also to allow his co-trustee, Ms.

6 | Sterling, to review the results of that examination.  *Id.* (stating that a person serving

7 | as trustee "*shall* allow a Co-Trustee" to review his medical records) (emphasis

8 | added).  As a result, in light of Plaintiff's signature of the Trust agreement, Dr. Spar

9 | was not merely permitted to disclose the results of his examination to Ms. Sterling

10 | and her attorneys; he had a legal duty to do so under section 1158.  *See* Cal. Evid.

11 | Code § 1158 (stating that a physician "*shall* make all of patient's records under his

12 | . . . custody or control available for inspection" by the requesting party) (emphasis

13 | added).

14 | **III.**   **CONCLUSION**

15 |        For all the foregoing reasons, Defendant Dr. Spar respectfully submits

16 | that his special motion to strike under California Code of Civil Procedure section

17 | 425.16 should be granted.

18 |

19 | DATED:  May 11, 2015      MUNGER, TOLLES & OLSON LLP

20 |              BRADLEY S. PHILLIPS
             BRIONNA N. NED

21 |

22 |

23 |      By:    /s/ Bradley S. Phillips

24 |          Bradley S. Phillips
     Attorneys for Defendant

25 |      JAMES EDWARD SPAR, M.D.

26 |

27 |

28 |